1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIKEB SADDOZAI,

        Plaintiff,

    v.

LOMU, et al.,

        Defendants.

Case No. 18-04047 BLF (PR)

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

(Docket No. 46)

Plaintiff, a state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.  The Court found the amended complaint, Dkt. No. 15[1], stated a cognizable claim of deliberate indifference to serious medical needs under the Eighth Amendment against Defendants David Lomu and Zachary Copeland at the San Mateo County Jail, Maguire Correctional Facility ("MCF"), and ordered the matter served on Defendants.  Dkt. No. 22. Defendants filed a motion for summary judgment on the grounds that there are no genuine disputes of any material facts and they are entitled to qualified immunity.  Dkt. No. 46.[2]

---

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

[2] In support of their motion, Defendants provide the declarations of counsel Paul S. Sheng, Dkt. No. 46-1, and Defendant D. Lomu, Dkt. No. 46-16.  Accompanying these

United States District Court
Northern District of California

1   Plaintiff filed an opposition along with a declaration and exhibits in support thereof, Dkt.

2   No. 54, and Defendants filed a reply, Dkt. No. 59.[3]  For the reasons stated below,

3   Defendants' motion for summary judgment is **GRANTED**.

4

5                                       **DISCUSSION**

6   I.    <u>Statement of Facts</u>

7          The underlying events took place while Plaintiff was detained at MCF during April

8   and June 2016.  The account of the events given by the parties differ as set forth below.

9          A.    <u>April 2016 Incident</u>

10         The following account is Plaintiff's version of events in his declaration in support

11  of his opposition.[4]  Saddozai Decl.; Dkt. No. 54 at 32-33.  On April 19, 2016, Plaintiff

12  alerted Defendant Lomu and his unnamed partner[5] through the cell intercom that he was

13  experiencing severe abdominal pain and vomiting blood.  Saddozai Decl. ¶ 4.  Defendant

14  Lomu and his partner ignored Plaintiff's "medical emergency," and disabled his cell's

15  emergency intercom monitor, preventing Plaintiff from alerting the officers for help as his

16  condition worsened.  *Id.* ¶ 5.  Plaintiff alerted inmates in neighboring cells by yelling

17  through the door and ventilation, to push their emergency intercom buttons to alert officers

18  _____

19  declarations are exhibits that include authenticated copies of excerpts from Plaintiff's
    medical records and investigative reports that were submitted under seal.  Dkt. Nos. 44-3,
20  44-4, 44-5, 44-6, 44-7, 44-8, 44-9, 44-10, 44-11.  Defendants later withdrew their
    administrative motion to file these exhibits under seal when it appeared from Plaintiff's
21  opposition to their motion that he consented to unredacted medical records being filed with
    the Court and being publicly accessible.  Dkt. Nos. 44, 70.

22  [3] In reply, Defendants object to Plaintiff's opposition as untimely.  Dkt. No. 59 at 6.  This
23  objection is OVERRULED because in a separate order, the Court deemed the opposition
    as timely filed after granting Plaintiff's motion for extension of time.  Dkt. No. 70.

24  [4] Where Plaintiff's facts in his declaration differ from the alleged facts in his verified
25  amended complaint, the Court will consider the facts stated in Plaintiff's declaration as
    superseding those in the amended complaint.  *Compare* Dkt. No. 15 and Dkt. No 54 at 32-
26  33.

27  [5] Plaintiff only specifically named Defendants Lomu and Copeland in this action and has
    never made any indication that he desired to add their unnamed partners as defendants.

28                                           2

to help him; Defendant Lomu and his partner ignored their requests. *Id.* ¶ 6. Defendants initiated recreational program for inmates on B-side and removed Plaintiff's cellmate, which prevented Plaintiff from receiving assistance to call for help while he lay immobile on the ground, locked in his cell. *Id.* ¶ 7. Defendant Lomu and his partner arrived at Plaintiff's cell and told him that his medical condition was not serious "or [Plaintiff] would be bleeding from his ears." *Id.* ¶ 8. Plaintiff waited over four hours for help, and a nurse arrived at his cell to provide Mylanta. *Id.* ¶ 9. Plaintiff vomited the Mylanta, including blood, at which point he began to bang the door and yell for help because Defendants had disabled his cell emergency intercom monitor; he had no way of alerting anyone of his severe pain and vomiting. *Id.* ¶ 10. Defendant Lomu shut down "inmates recreational program" and arrived at Plaintiff's cell and pushed the alarm for a code blue, causing the fire department to arrive and transfer Plaintiff to the hospital where he was diagnosed with kidney stones. *Id.* ¶ 11.

The following account is Defendant Lomu's version of events as provided in his declaration, which is consistent with the account given in his incident report prepared the day following the incident. Dkt. No. 46-16; Dkt. No. 44-3. On April 19, 2016, Defendant Lomu was assigned as a Correctional Officer to MCF's "6 West," which is a protective custody housing unit. Lomu Decl. ¶ 2. At approximately 0624 hours that day, Defendant Lomu and his partner began to conduct "count and inspection," and arrived at cell #20. Lomu Decl. ¶ 3. At that time, cell #20 housed Plaintiff and inmate Robert Walker. *Id.* ¶ 4. Plaintiff told the officers that he was feeling pains coming from his lower left side of his stomach, and requested they call medical. *Id.* After Defendant Lomu and his partner completed their rounds, they called down to the medical floor and informed the nurse of Plaintiff's medical issue. *Id.* At approximately 0653 hours, Nurse Liz Martinez arrived on the pod and spoke with Plaintiff. *Id.* ¶ 5. The incident report indicates that Defendant Lomu was present at each of Nurse Martinez's encounters with Plaintiff. Dkt. No. 44-3. The nurse later provided Plaintiff with Maalox and advised him to take it to help with the

United States District Court
Northern District of California

abdominal pain.  Lomu Decl. ¶ 5.  Plaintiff requested that they call the paramedics and have him shipped to the hospital.  *Id.*  At approximately 0717 hours, Plaintiff used the intercom to inform Defendant Lomu that he was in pain and the medicine was not working; Defendant Lomu called the nurse at 0718 and informed the nurse of Plaintiff's pain.  *Id.* ¶ 6.  At approximately 0724 hours, the nurse arrived on the pod to examine and speak to Plaintiff.  *Id.* ¶ 7.  Plaintiff claimed that his appendix felt like it was going to explode.  *Id.*  Plaintiff was on the ground in a fetal position and holding the left side of his stomach.  *Id.*  After the nurse took a look at him, she informed Plaintiff that she would notify the charge nurse on the medical floor.  *Id.*  Plaintiff demanded that an ambulance be called to take him to the hospital.  *Id.*  He began yelling and hitting the door, demanding an ambulance.  *Id.*  At the time, Plaintiff's cellmate, Inmate Walker, was trying to sleep but could not because Plaintiff was making so much noise; Defendant Lomu decided to move Inmate Walker to cell #42.  They continued to communicate with Plaintiff and the nurse waiting a decision of any further and progressive actions.  *Id.*  Defendant Lomu contacted the nurse again at 0822 hours, to update her that Plaintiff was now claiming that he was throwing up.  *Id.* ¶ 8.  The nurse arrived on the pod at 0826 hours to evaluate Plaintiff again.  *Id.* ¶ 9.  Plaintiff informed the nurse that he did not want to be seen by the prison's doctor and that he could not get up.  *Id.*  Plaintiff requested that they physically drag him out and or call the paramedics.  *Id.*  The nurse left and returned with a wheelchair and offered to escort Plaintiff via wheelchair down to the doctor on site in the 2nd floor clinic, where they can run more tests on him.  *Id.*  Plaintiff refused, and once again demanded an ambulance.  *Id.*  Nurse Martinez left the pod to update and consult with the charge nurse and doctor.  *Id.*  At approximately 0855 hours, Defendant Lomu called the clinic and was informed that they were preparing Plaintiff's paperwork in prep of his transportation.  *Id.* ¶ 10.  At approximately 0906 hours, Charge Nurse Gladys informed Defendant Lomu that Plaintiff would be transported to San Mateo General Hospital on a Code 3.  *Id.* ¶ 11.  The message was relayed to control as well as the Housing Sergeant.  *Id.*  At approximately

4

0907 hours, Nurse Martinez arrived on the pod to take Plaintiff's vitals, which came back normal. *Id.* ¶ 12. At approximately 0915 hours, local Redwood City Fire Department and paramedics arrived on the pod. *Id.* Plaintiff was escorted out of the pod at 0923 hours with Fire and paramedics as well as Deputy Sheriff Cost #475. *Id.*

### B. June 2016 Incident

The following account is Plaintiff's version of events in his declaration in support of his opposition.[6] Saddozai Decl.; Dkt. No. 54 at 35-36. According to Plaintiff, on June 11, 2016, Defendant Copeland and his unnamed partner[7] denied Plaintiff serious medical needs "by refusing to call medical personnel upon [Plaintiff's] repeated requests for [his] abdominal pains and chronic constipation in the presence of other inmates." Saddozai Decl. ¶ 4. Defendant Copeland "followed the same course of inaction the following day," causing Plaintiff's condition to worsen and render him immobile, preventing him from participating in recreational activities, shower, and routine movements. *Id.* ¶ 5. Plaintiff filed medical slips and complaints against Defendant Copeland, which went unanswered. *Id.* ¶ 6. There were no full-time physicians available within the facility, and Defendant Copeland would not call the paramedics. *Id.* ¶ 7.

According to Defendants, a Correctional Health Services Progress Report dated June 11, 2016, shows that Plaintiff was seen at 9:00 a.m. that day. Sheng Decl., Ex. I at 1. The nurse practitioner was called by an unnamed deputy to assess Plaintiff secondary to his complaints of a stomach ulcer, nausea and vomiting, severe abdominal pain, and constipation. *Id.* Plaintiff was found to be alert and oriented times three, and not in acute distress. *Id.* His vital signs were taken, and he was found to have positive bowel sounds and soft abdomen and tenderness. *Id.* He was noted to be on Tylenol-Codeine #3 (pain reliever), Docustate (stool softener), and Zofran (anti-nausea). *Id.* Plaintiff was seen again

---

[6] *See supra* at 2, fn. 2.

[7] *See supra* at 2, fn. 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

later that day. *Id.* At 12:15, the nurse practitioner made a note stating the Emergency Department doctor was called regarding the ongoing constipation, and laxative medication (Bisacodyl) was ordered and given. *Id.*; Sheng Decl., Ex. J.

Plaintiff submitted only two inmate request forms on June 14, 2016. Sheng Decl., Exs. K, L. In the first, Plaintiff requested to be moved from security risk status, and the second related to a medical co-pay issue. *Id.*

Plaintiff was seen by Correctional Health on June 23, 2016, when it was noted that he refused his Tamulosin (medication to facilitate urination) for eight consecutive nights, and also refused his Docusate (stool softener) for seven nights with no reason given for the refusal. Sheng Decl., Ex. M.

## II.    Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the

6

burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See*

*id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.       Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id*. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

### 1.       Defendant Lomu

Defendants assert that Plaintiff cannot establish deliberate indifference to serious medical needs against Defendant Lomu because Plaintiff was in fact promptly and

United States District Court
Northern District of California

properly treated for his medical complaints on April 11, 2016. Dkt. No. 46 at 9. They assert that Defendant Lomu's declaration, the incident report, as well as subpoenaed Correctional Health Services records confirm that Plaintiff's version of events is simply untrue. Defendants assert that Defendant Lomu's declaration establishes that after Plaintiff complained of stomach pain at 6:24 a.m., Defendant Lomu called for medical attention, and the nurse arrived at 6:53 a.m. to provide treatment. *Id.*; Lomu Decl. ¶ 5. When Plaintiff complained of pain at 7:17 a.m., Defendant Lomu informed the nurse who arrived at 7:24 a.m. and saw him again. Lomu Decl. ¶¶ 6-7. In response to Plaintiff's persistent complaints, Defendant Lomu again summoned the nurse, who arrived at 8:26 a.m. and offered to take him to the on-site doctor. *Id.* Plaintiff refused. *Id.* ¶¶ 8-9. Plaintiff was then processed to go to the Emergency Department and was escorted out of the pod at 9:23 a.m. *Id.* ¶¶ 10-12. Defendants assert that the Correctional Health Progress Report from April 19, 2016, corroborates Defendant Lomu's statement. Dkt. No. 46 at 9; Sheng Decl., Ex. G, Dkt. No. 44-4 at 2. This report shows that Plaintiff was seen at 7:10 a.m. for a complaint of abdominal pain and other symptoms. *Id.* His vital signs were taken, and he was noted to have a steady gait and able to ambulate without any difficulty. *Id.* Plaintiff was given Mylanta (antacid). *Id.* Plaintiff was then seen 20 minutes later at 7:30 a.m., when he was laying on the floor claiming severe abdominal pain. *Id.* He was found to be alert and oriented times four and was reassured he would be seen soon by a nurse practitioner. *Id.* At 9:00 a.m., it was noted a report was given to the medical doctor, who ordered that Plaintiff be sent to the Emergency Department. *Id.* Plaintiff was then promptly transported to the San Mateo Medical Center Emergency Department, where he was seen at 9:53 a.m. and provided care, including medications and a CT scan. *Id.*, Ex. H, Dkt. No. 44-5.

In opposition, Plaintiff recites the allegations from his amended complaint, and asserts there remain genuine issues of material facts that require the denial of Defendants' motion. Dkt. No. 54 at 3, 30. Plaintiff asserts his allegations show that Defendants acted

United States District Court
Northern District of California

9

"maliciously and sadistically" in denying him treatment for his serious medical need, "made obvious by [his] severe abdominal pains causing [him] to be immobile on the ground in a fetal position and holding the lefts side of his stomach should have been a red flag[] for officers to call paramedics instead of waiting to complete count inspection as stated in defendants' declaration." *Id.* at 5.  Plaintiff asserts that there is a factual question "whether defendant checked on plaintiff or opened the door, and defendant moving plaintiff's cellmate out of the cell quarters which prevented plaintiff from receiving assistance or wait to remove cellmate to call for help, is circumstantial evidence that creates an issue of material fact barring summary judgment." *Id.*  Plaintiff asserts that Defendants waiting to call an ambulance "raises a factual question" and are "issues of material fact barring summary judgment." *Id.*  Plaintiff asserts that his condition was "even obvious to a layperson that plaintiff is in need of hospitalization or other crucial medical care." *Id.* at 6.  Plaintiff asserts that the delay and denial by Defendants' actions "resulted in further significant injury and unnecessary and wanton infliction of pain." *Id.* Lastly, Plaintiff asserts that he has not had an adequate chance to contest Defendants' summary judgment motion because he has no access to inmate witnesses. *Id.* at 6-7.  He also asserts that inadequacies and deficiencies within the prison law library services means he is unable to provide sworn certified copies of affidavits and therefore he "cannot raise affirmative defense in pro se." *Id.*  In support, he provides his own declaration and that of other CSP inmates who attest to the alleged "inadequacies and deficiencies" of the prison law program. *Id.* at 11-14. Lastly, Plaintiff provides a list "of genuine issues of material fact that require denial of defendants' motion." *Id.* at 30.

In reply, Defendants assert that Plaintiff has only offered his own declaration to oppose their summary judgment, and that his declaration is insufficiently probative to establish a triable issue of material fact in light of the evidence they provided in support of their motion.  Dkt. No. 59 at 2.  They assert that even if a reasonable factfinder could conclude that Plaintiff's self-serving declaration creates a factual dispute as to how quickly

he was treated, that is insufficient to save his claim from summary judgment. *Id.* at 3.

Defendants assert that Plaintiff's claim is that they delayed treatment in violation of the

Eighth Amendment, and that the issue is whether Plaintiff's evidence is sufficient to create

a triable issue of material fact on that claim. *Id.* Defendants assert that Plaintiff has the

burden of proving that defendants knew of and disregarded an excessive risk to his health

and safety, that the delay led to further injury, that the course of treatment chosen was

medically unacceptable under the circumstances, and that such treatment was chosen in

conscious disregard of an excessive risk to his health and the delay resulted in harm, but

that Plaintiff's declaration does not supply any evidence to satisfy these elements of his

claim. *Id.* at 3-4.

Based on the evidence submitted, the Court finds there are no genuine issues for

trial. It is undisputed that Defendant Lomu became aware of Plaintiff's ailments at

approximately 6:24 a.m. on April 19, 2016, during "count and inspection." *See supra* at 3.

At that time, Plaintiff merely told the officers that he was feeling pains coming from his

lower abdomen and requested medical be contacted; there is no evidence that Plaintiff was

showing any visible signs of distress. *Id.* Defendant Lomu finished his inspection and

then notified the medical floor about Plaintiff's medical complaints. *Id.* According to the

evidence, the completion of the inspection must have taken less than thirty minutes since

Defendant Lomu first spoke to Plaintiff at 6:24 a.m., and then twenty-nine minutes later,

Nurse Martinez came to check on Plaintiff at 6:53 a.m. *Id.* Plaintiff received treatment in

the form of Maalox shortly thereafter. *Id.* Defendant Lomu next spoke with Plaintiff

twenty minutes later at 7:17 a.m., at which time Plaintiff informed him that the medicine

was not working, and he was still in pain. *Id.* In response, Defendant Lomu immediately

contacted the nurse who returned and spoke with Plaintiff seven minutes later. *Id.* By this

time, Plaintiff was on the ground in a fetal position, holding the left side of his stomach.

*Id.* at 3-4. The nurse said she would notify the charge nurse on the medical floor. *Id.* at 4.

Defendant Lomu contacted the nurse again at 8:22 a.m., to update her on Plaintiff's new

11

complaint of throwing up. *Id.* The nurse arrived a few minutes later to evaluate Plaintiff again. *Id.* She returned with a wheelchair to escort Plaintiff to the onsite doctor on the 2nd floor clinic where they could run tests on him, but Plaintiff refused. *Id.* Then at 8:55 a.m., thirty-three minutes after his last call, Defendant Lomu called the clinic again and was informed that they were preparing Plaintiff's paperwork to prepare him for transportation to the hospital. *Id.* Plaintiff was escorted out of his cell less than thirty minutes later, at 9:23 a.m., and taken to the hospital by paramedics. *Id.* According to this evidence, approximately three hours passed from when Plaintiff first complained of abdominal pain to Defendant Lomu at 6:24 a.m., until he was transported to the hospital at 9:23 a.m. Furthermore, during those three hours, Defendant Lomu did not ignore Plaintiff's initial complaints but rather reported the matter to the medical floor as soon as he finished count inspection, which was less than thirty minutes from the time he first learned of Plaintiff's medical issues. Thereafter, Defendant Lomu continuously communicated with Plaintiff regarding the status of his condition, promptly updated the nurse accordingly, and also checked with the nurse on the status of Plaintiff's care, until it was decided that treatment at the hospital was appropriate. Based on this evidence, it cannot be said that Defendant Lomu acted at any time to deny, delay, or intentionally interfere with Plaintiff's medical treatment. *See McGuckin*, 974 F.2d at 1062.

Plaintiff asserts in opposition that Defendant should have promptly called the paramedics instead of waiting to complete count inspection, and that his being "immobile on the ground in a fetal position and holding the left side of this stomach should have been a red flag." Dkt. No. 54 at 5. Plaintiff does not dispute, however, the medical records in support of Defendant Lomu's declaration showing the interim measures he took to call in-house medical staff on several occasions before Plaintiff was sent to the hospital. As discussed above, the evidence shows that when Defendant Lomu first came to Plaintiff's cell at 6:24 a.m. Plaintiff merely told him that he was feeling pains from his lower left side of the stomach and requested that medical be called. *See supra* at 3, 9. There is no

12

allegation or evidence that Defendant Lomu witnessed Plaintiff exhibiting physical signs of distress at that time by which he inferred that Plaintiff's medical needs were emergent. *Id.* Accordingly, Plaintiff has failed to establish the existence of disputed issues of material fact that Defendant Lomu knew of a risk of serious harm to Plaintiff if he waited to contact medical until after completing count inspection and that he waited anyway. Plaintiff also asserts that there is a factual question "whether defendant checked on plaintiff or opened the door" but fails to explain the relevancy or probative value of this question. If Plaintiff is referring to whether Defendant Lomu checked on him during count inspection, Defendants' evidence shows that Plaintiff communicated his need for medical attention and Defendant Lomu responded to that request. Thereafter, the nurse checked on Plaintiff several times and Defendant Lomu was present at each of these encounters. Dkt. No. 44-3. Accordingly, whether Defendant Lomu actually opened the door and checked on Plaintiff is immaterial. Plaintiff also asserts that the removal of his cellmate "is circumstantial evidence that creates an issue of material fact." *See supra* at 10. It is undisputed that Plaintiff's cellmate was moved, but the reason why is disputed. Plaintiff asserts that his cellmate was moved in order to deny him further assistance to call for help, while Defendants assert it was because the inmate could not sleep due to Plaintiff making so much noise. *Id.* at 4. But the evidence submitted by Defendants shows that even after the cellmate was moved, Defendant Lomu continued to communicate with Plaintiff and the nurse regarding his condition. *Id.* at 4. Accordingly, the dispute over why his cellmate was moved is ultimately immaterial. Lastly, Plaintiff asserts that Defendants waiting to call an ambulance is an issue of material fact. *Id.* at 10. However, the submitted evidence shows that Defendant Lomu informed the medical floor about Plaintiff's condition and that medical personnel made the decisions with respect to Plaintiff's treatment. There is no allegation or evidence that Defendant Lomu had the authority to call the paramedics but chose not to, or that he had any inkling that medical personnel's response was inadequate. In other words, there is no evidence that Defendant Lomu knew that Plaintiff was facing a

substantial risk of serious harm and disregarded that risk by failing to take reasonable steps

to abate it.  *See Farmer*, 511 U.S. at 837.  What the evidence does show is that Defendant

Lomu was aware that each time he alerted the medical floor of Plaintiff's condition, the

nurse came and evaluated Plaintiff.  *See supra* at 3-4.  Defendant Lomu was present during

each of the encounters between the nurse and Plaintiff.  *Id.* at 3.  Accordingly, Defendant

Lomu was aware of the following: (1) the nurse initially provided Plaintiff with medicine,

and that when the medicine was ineffective, the nurse offered to take Plaintiff to the on-site

doctor, which he refused; (2) when Plaintiff's condition worsened, the nurse consulted

with the charge nurse and doctor; and (3) Plaintiff's paperwork was being prepared to

transport him to the hospital.  *Id.* at 3-4.  It cannot be said, based on his knowledge that

medical personnel were providing ongoing care to Plaintiff during the three hours that

passed, that Defendant Lomu was aware that an excessive risk of harm to Plaintiff existed

and he chose to disregard it.  Plaintiff has provided no evidence showing the existence of a

genuine issue of material fact in this respect.

      To the extent that Plaintiff is claiming that there was unreasonable delay in

transporting him to the hospital, there is no evidence showing that Defendant Lomu was

responsible for that delay.  Rather, the evidence shows that Defendant Lomu deferred to

medical staff with respect to the appropriate course of treatment.  Medical staff decided

that the first course of treatment was to prescribe Mylanta, and when the medicine was not

effective, to then consult with the on-site doctor for tests.  *See supra* at 4.  Plaintiff refused

and demanded to be transferred to the hospital.  *Id.*  The issue then comes down to a

difference of opinion about the course of treatment.  However, "[a] difference of opinion

between a prisoner-patient and prison medical authorities regarding treatment does not

give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Similarly, a showing of nothing more than a difference of medical opinion as to the need to

pursue one course of treatment over another is insufficient, as a matter of law, to establish

deliberate indifference.  *Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242

United States District Court
Northern District of California

(9th Cir. 1989).  Plaintiff fails to submit any evidence showing that there is a genuine dispute of material fact in this regard.

Plaintiff also asserts in opposition that he is unable to sufficiently oppose Defendants' motion because of inadequacies and deficiencies in the prison law program. Defendants assert in reply that his declarations and documents in support do not raise a triable issue of material fact.  Dkt No. 59 at 6.  They assert none of these offered papers have any impact on the elements of Plaintiff's deliberate indifference claim.  *Id.*

The Court notes that at no time during these proceedings did Plaintiff claim he was unable to conduct discovery or obtain witness statements due to inadequacies and deficiencies in the prison law program, nor did he ever seek an extension of time to conduct further discovery, claiming it was necessary for him to oppose Defendants' summary judgment.  The Court also notes that notwithstanding his assertion that he was unable to obtain witness statements, Plaintiff still managed to obtain affidavits from several inmates to submit with his opposition to support this very argument.  Furthermore, Plaintiff fails to identify the potential witnesses or explain what kind of testimony they would have provided that would raise a genuine issue of material fact.  With respect to his cellmate, the Court has already discussed that the fact of his removal is undisputed, and the reason for it is ultimately immaterial.  *See supra* at 13.  With respect to the testimony of neighboring inmates, Plaintiff provides no description as to what sort of evidence these inmates would have provided and how their testimony would point to genuine issues of material facts.  According to his version of events, he alerted inmates in neighboring cells to push their emergency intercom buttons to get officers to help him and that Defendant Lomu ignored their requests.  *See supra* at 2.  Even if this were true, Plaintiff does not dispute the evidence submitted by Defendants showing that Defendant Lomu took steps to obtain medical treatment for Plaintiff by contacting the medical floor.  *Id.* at 3.  Therefore, Plaintiff has failed to show that any potential witness testimony would raise triable issues of fact to defeat Defendants' summary judgment motion.  Plaintiff ultimately fails to show

that the limited lack of access to the library or the described inadequacies thereof hindered his efforts to prepare an adequate opposition, and his assertions in that regard are general and conclusory.  Dkt. No. 54 at 11.  Lastly, Plaintiff's asserted "list of genuine issues of material fact" does not actually identify any disputed facts, only issues.  Dkt. No. 54 at 30.  Furthermore, Plaintiff made no factual allegations in his amended complaint with respect to some of the issues raised in this list, e.g., the issue of whether he suffered "a tangible residual injury as a result of the defendants conduct" or whether the "referral of medical treatment produced a different outcome in plaintiff's medical treatment."  *Id.*  Accordingly, it cannot be said that Plaintiff has established the existence of any genuine issues of material facts in this list where no facts were alleged.

Based on the foregoing, Defendants have established the absence of a genuine issue of material fact with regard to the Eighth Amendment claim against Defendant Lomu.  *See Celotex Corp.*, 477 U.S. at 323.  Plaintiff has failed in response to identify with reasonable particularity the evidence that precludes summary judgment.  *Id.* at 324; *Keenan*, 91 F.3d at 1279.  Accordingly, Defendant Lomu is entitled to summary judgment on this claim.  *Id.*

### 2. <u>Defendant Copeland</u>

Defendants assert that Plaintiff cannot establish deliberate indifference to serious medical needs against Defendant Copeland because Plaintiff was promptly and properly treated for his medical complaints in June 2016.  Dkt. No. 46 at 10.  They assert that the Correctional Health Services records demonstrate that Plaintiff's narrative is false, and they completely undermine the basis for his claim.  *Id.*  Specifically, Defendants rely on the Correctional Health Services Progress Report dated June 11, 2016, showing that Plaintiff was seen on 9:00 a.m. that day, when an unnamed deputy called a nurse practitioner to assess Plaintiff.  *Id.*; Sheng Decl., Ex. I, Dkt. No. 44-6.  The nurse practitioner was called by an unnamed deputy to assess Plaintiff for his complaints of a stomach ulcer, nausea and vomiting, severe abdominal pain, and constipation.  Dkt. No. 46 at 11; Sheng Decl., Ex. I.  The nurse noted that Plaintiff was alert and oriented times three,

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and not in acute distress.  *Id.*  Plaintiff's vital signs were taken, and he was found to have

2   positive bowel sounds and a soft abdomen and tenderness.  *Id.*  The nurse noted that

3   Plaintiff was currently on Tylenol-Codeine #3 (pain reliever, Docusate (stool softener),

4   and Zofran (anti-nausea).  *Id.*  Plaintiff was provided with 30 mL of Milk of Magnesia

5   (laxative) and was encouraged to intake fluids.  *Id*.  Plaintiff was seen again later that day.

6   *Id.*  At 12:15 that day, the nurse made a note stating the Emergency Department doctor was

7   called regarding ongoing constipation, and laxative medication (Bisacodyl) was ordered

8   and given per doctor's orders.  *Id.*; Sheng. Decl., Ex. J, Dkt. No. 44-7.  Defendants also

9   assert that although Plaintiff claims he "submitted multiple health care request and

10  grievance complaints and medical personnel continued the same coarse [*sic*] of treatment

11  determined to be the actual cause of Saddozai's chronic constipation and abdominal pain,"

12  Dkt. No. 15 at 6, Plaintiff only submitted two inmate request forms on June 14, 2016,

13  neither of which involved the course of treatment of his chronic constipation and

14  abdominal pain.  Dkt. No. 46 at 11; Sheng Decl., Exs. K, L, Dkt. Nos. 44-8, 44-9.

15  Furthermore, Defendants assert that the next time Plaintiff was seen by Correctional

16  Health on June 23, 2016, it was noted that he refused his Tamulosin (medication to

17  facilitate urination) for eight consecutive nights and also refused his Docusate (stool

18  softener) for seven nights, with no reason given for the refusal.  Dkt. No. 46 at 11; Sheng

19  Decl., Ex. M, Dkt. No. 44-10.  Based on this sequence of events, Defendants assert that

20  Plaintiff cannot prove deliberate indifference to his medical needs arising from his June 11,

21  2016 complaints.  Dkt. No. 46 at 11.

22       Defendants also assert that Plaintiff was served with basic written discovery in

23  order to develop facts beyond the vague allegations of the amended complaint, but that as

24  of the date of the filing of their motion, Plaintiff failed to respond to any of the discovery

25  requests.  Dkt. No. 46 at 12; Sheng Decl., Exs. A through F, Dkt. Nos. 46-2 through 46-7.

26  Defendants' discovery included Requests for Admissions on all elements of Plaintiff's

27  liability and damages claims.  Sheng Decl., Ex. E, F.  Defendants assert that for example,

28

17

United States District Court
Northern District of California

1

2    Plaintiff was asked to admit facts such as that Deputies Lomu and Copeland did not act

3    with deliberate indifference to Plaintiff's serious medical needs, that Plaintiff's Eighth

4    Amendment rights were not violated, and that Plaintiff has not sustained any damages.

5    Dkt. No. 46 at 12.  Defendants assert that because Plaintiff failed to respond to these

6    requests at all, they have been automatically deemed admitted.  *Id.*, citing Fed. R. Civ. P.

7    36(a)(3); *O'Bryant v. Allstate Ins. Co.* (D CT 1985) 107 FRD 45, 48; *Federal Trade

     Comm'n v. Medicor, LLC* (CD CA 2002) 217 F.Supp.2d 1048, 1053.

8         In opposition, Plaintiff asserts that Defendant Copeland failed to provide a

9    declaration.  Dkt. No. 54 at 3.  He asserts that a reasonable jury could find for him based

10   on the facts in his declaration.  *Id.* at 7.  Defendants assert in reply that the evidence

11   provided by Plaintiff in his declaration is insufficiently probative to raise a triable issue of

12   material fact for his Eighth Amendment claim of deliberate indifference.  Dkt. No. 59 at 4.

13   At best, Defendants assert, his evidence sets forth a difference of opinion regarding the

14   course of his treatment, and that a mere difference of medical opinion regarding the ideal

15   course of treatment is insufficient, as a matter of law, to establish deliberate indifference in

16   violation of the Eighth Amendment.  *Id.* at 5.

17        The Court first addresses the issue of Defendant's Request for Admissions.

18   Plaintiff's opposition is silent with respect to Defendants' argument that his failure to

19   respond to their request for admissions means those admissions are deemed admitted under

20   Rule 36(a)(3).  Dkt. No. 54.  Plaintiff does not deny that he received Defendants' request

21   for admissions along with other discovery requests.  *Id.*  Rather, he merely repeats the

22   allegations from his amended complaint and rests on his declaration.

23        Rule 36 serves two vital purpose: "first to facilitate proof with respect to issues that

24   cannot be eliminated from the case, and secondly, to narrow the issues by eliminating that

25   that can be."  Fed. R. Civ. P. 36, advisory committee note; *Conlon v. U.S.*, 474 F.3d 616,

26   622 (9th Cir. 2007).  Rule 36 provides several ways to respond to a request for admissions,

27   including making a specific denial, providing a detailed explanation why the answering

28

party cannot truthfully admit or deny a request, or objecting to a request.  Fed. R. Civ. P. 36(a)(4).  Lastly, if the time for responding has passed, a party can move for withdrawal or amendment under Rule 36(b).  Plaintiff made none of the appropriate responses under Rule 36(a), and there is no indication that he had insufficient opportunity to do so.  Nor has Plaintiff moved for withdrawal or amendment under Rule 36(b), even after having notice of this issue in Defendants' summary judgment motion.  Accordingly, Defendant Copeland's request for admissions, Dkt. No. 46-7, is deemed admitted under Rule 36(a)(3), and may be relied on as the basis for granting summary judgment.  *Conlon*, 474 F.3d at 621 (citing *O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958)).

Based on the evidence submitted and viewing it in the light most favorable to Plaintiff, the Court finds there is an absence of a genuine issue of material fact.  In response to Defendants' motion, Plaintiff must show more than the mere existence of a "scintilla of evidence" or some "metaphysical doubt" as to the material facts at issue.  *In Re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  He must come forth with evidence from which a jury could reasonably render a verdict in his favor.  *Id.*  In opposition, Plaintiff asserts the following allegations in his declaration: (1) on or about June 11, 2016, Defendant Copeland refused to call medical to treat his complaints of abdominal pain and chronic constipation; (2) Defendant Copeland "followed the same course of inaction the following day," causing his condition to worsen; (3) Plaintiff filed medical slips and complaints against Defendant Copeland which went unanswered; (4) there were no full time physicians available at the facility; and (5) Defendant Copeland would not call paramedics in response to Plaintiff's requests for "emergency help" for his severe abdominal pain and chronic constipation.  Dkt. No. 54 at 35-36.  The Court discusses any existing disputes and the materiality of each allegation.

With respect to the first allegation, Plaintiff is vague as to exactly when during June 11, 2016, Defendant Copeland allegedly refused to call medical.  At the same time, Plaintiff does not dispute Defendants' evidence showing that he received medical

treatment at the request of an unnamed deputy at 9:00 a.m. on June 11, 2016, and then another follow-up visit at around noon. *See supra* at 5. Even if the Court assumes Defendant Copeland refused to call medical at some point on June 11, 2016, either before 9:00 a.m. or at some time after 12:15 p.m., Plaintiff has admitted that Defendant Copeland promptly forwarded his request for medical attention to the appropriate personnel and that Defendant Copeland's response to his request for medical attention was not deliberately indifferent. Dkt. No. 46-7 at 3-4, Request for Admission Nos. 3, 9. Plaintiff also admitted that he did not have a serious medical need when he complained to Defendant Copeland about his symptoms, as alleged in his complaint. *Id*., Request for Admission No. 2. Accordingly, the first allegation, even if true, is immaterial. Plaintiff has failed to establish a genuine dispute of material fact because when he asked Defendant Copeland for medical attention, he did not have a serious medical need, and even if Defendant Copeland refused to contact medical at one time, there is no dispute that he did contact medical at some time during the day and was not deliberately indifferent.

With respect to the second allegation that Defendant Copeland's "same course of inaction the following day" caused his condition to worsen, Plaintiff again fails to establish the existence of a genuine dispute of material fact. As discussed in the previous paragraph, Plaintiff has failed to establish the existence of a genuine dispute of material fact that Defendant Copeland acted with deliberate indifference on the day of June 11, 2016. Accordingly, Plaintiff cannot establish Defendant Copeland acted with deliberate indifference based on conduct from the day before when that conduct was not deliberately indifferent. Furthermore, Plaintiff admitted that he did not suffer: 1) a tangible residual injury, 2) further significant injury, or 3) further unnecessary and wanton infliction of pain as a result of Defendant Copeland's conduct. *Id.*, Request for Admission Nos. 4, 5, 6. He also admits that the alleged delay in medical treatment that he attributed to Defendant Copeland did not lead to further injury. *Id.*, Request for Admission No. 8. Accordingly, the allegation that Defendant Copeland's conduct on the following day caused Plaintiff's

1    condition to worsen does not raise a genuine issue of material fact.

2         With respect to the third allegation that Plaintiff filed complaints and medical slips

3    that went unanswered, it is immaterial.  That factual allegation would only be evidence that

4    Plaintiff made such allegations at or near the time, not that Defendant Copeland acted with

5    deliberate indifference.  The fourth allegation that there is no full-time physician available

6    at the facility is also immaterial.  Plaintiff admitted that Defendant Copeland promptly

7    forwarded Plaintiff's request for medical attention to the appropriate personnel.  Dkt. No.

8    46-7 at 4, Request for Admission No. 9.  Furthermore, the undisputed evidence shows that

9    there was on-site medical staff available, and that a nurse saw Plaintiff twice on the day at

10   issue and provided medical treatment.  *See supra* at 5-6.  Accordingly, the lack of a full-

11   time physician is immaterial on the issue of whether Defendant Copeland acted with

12   deliberate indifference for failing to call an ambulance when there was medical treatment

13   available at the prison.

14        Lastly, the fifth allegation that Defendant Copeland would not call paramedics in

15   response to Plaintiff's requests for "emergency help" for his severe abdominal pain and

16   chronic constipation does not raise a genuine dispute of material fact.  Firstly, this

17   allegation is vague as Plaintiff makes no explanation as to when this refusal to call the

18   paramedics occurred.  In addition, Plaintiff admits that Defendant Copeland promptly

19   forwarded his request for medical attention to the appropriate personnel.  Dkt. No. 46-7 at

20   4, Request for Admission No. 9.  As such, the fact that Defendant Copeland brought

21   Plaintiff's medical complaints to the attention of "appropriate personnel," e.g., onsite

22   medical staff instead of calling the paramedics does not render his actions deliberately

23   indifferent.  Rather, as Defendants assert, Plaintiff's evidence sets forth a difference of

24   opinion about the course of treatment, Dkt. No. 59 at 5, which does not give rise to a §

25   1983 claim.  *See Franklin*, 662 F.2d at 1344.

26        Based on the foregoing, Defendants have established the absence of a genuine issue

27   of material fact with regard to the Eighth Amendment claim against Defendant Copeland.

28

United States District Court
Northern District of California

21

*See Celotex Corp.*, 477 U.S. at 323.  In response, Plaintiff has failed to identify with reasonable particularity the evidence that precludes summary judgment, *id.* at 324; *Keenan*, 91 F.3d at 1279, or to come forth with evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387; *Liberty Lobby*, 477 U.S. at 25.  Accordingly, Defendant Copeland is entitled to summary judgment on this claim.  *Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendants David Lomu and Zachary Copeland's motion for summary judgment is **GRANTED**.  Dkt. No. 46.  The Eighth Amendment claims against them are **DISMISSED with prejudice**.[8]

This order terminates Docket No. 46.

**IT IS SO ORDERED.**

Dated:  __August 21, 2020_____

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.18\04047Saddozai_grant.MSJ

---

[8] Because the Court finds no constitutional violation occurred, it is not necessary to discuss Defendants' qualified immunity argument.

22